UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHARLENE GRADY,

Plaintiff,

v. Case No. 8:13-cv-1395-T-17AEP

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

Defendant.
_____________________________________/

**REPORT AND RECOMMENDATION**

Plaintiff seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, it is recommended that the Commissioner's decision be affirmed.

**I.**

**A. Procedural Background**

Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 155-64). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr.74-96). Plaintiff then requested an administrative hearing (Tr. 101). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 42-67). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 23-41). Subsequently, Plaintiff requested review from the Appeals

Council, which the Appeals Council denied (Tr. 1-13). Plaintiff then timely filed a complaint with this Court (Dkt. No. 1). The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**B. Factual Background and the ALJ's Decision**

Plaintiff, who was born on February 11, 1971, claimed disability beginning October 1, 2008 (Tr. 51, 155).[1] Plaintiff completed high school and attended some college (Tr. 48, 221). Plaintiff's past relevant work experience included work as a cashier, customer service representative, and medical transcription technician (Tr. 65, 207). Plaintiff alleged disability due to seizures and epilepsy (Tr. 217).

After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: a seizure disorder, sleep apnea, chronic headaches, and obesity (Tr. 29). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 30). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform medium work, except that she should never climb ladders, ropes, or scaffolds and must avoid even moderate exposure to industrial hazards, unprotected heights, and moving machinery (*id.*). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably

[1] Initially, Plaintiff alleged an onset date of January 1, 2006, but she later amended her onset date to October 1, 2008, during the administrative hearing (Tr. 47, 51, 154, 155, 162).

could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they were inconsistent with the RFC (Tr. 31). Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could perform her past relevant work as a transcriptionist, a customer service representative, and a cashier (Tr. 33). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 34).

**II.**

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must

determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates

against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*).

**III.**

Plaintiff argues here that the ALJ erred by failing to afford the proper weight to the medical opinions and records, failing to properly consider Plaintiff's subjective complaints of headaches alone and in combination with her seizure disorder, failing to give Plaintiff's subjective complaints full credit, and posing an incomplete hypothetical to the VE. For the reasons that follow, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

**A. Medical Opinions**

Plaintiff first contends that the ALJ erred in considering the opinion of Dr. Erasmo Passaro and the records from Bayfront Medical Center ("Bayfront") regarding Plaintiff's limitations as a result of her seizures. When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted). The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical

opinion evidence. *See* 20 C.F.R. §§ 404.1527, 416.927. In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Further, the more consistent the medical opinion is with the record as a whole, the more weight that opinion will receive. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (citation omitted). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). In fact, the ALJ may reject any opinion when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*).

Despite Plaintiff's claims, the ALJ properly considered the treatment notes of both Dr. Passaro and Bayfront in determining that Plaintiff maintained the ability to perform her past relevant work. As discussed in the ALJ's decision, the evidence of record indicated that Plaintiff had a history of multiple events, which likely represented generalized tonic-clonic seizures, but

did not support the frequency of Plaintiff's seizure activity to the level alleged (Tr. 32). For example, in March 2008, Plaintiff reported to Bayfront after reportedly experiencing a seizure (Tr. 281-84). Outside of the appearance of mild distress, Plaintiff demonstrated normal findings upon examination (Tr. 282). Subsequently, in July 2009, Plaintiff reported to Bayfront following another reported seizure (Tr. 274-79). Upon examination, Plaintiff again demonstrated normal findings and was fully oriented, alert, and in no acute distress (Tr. 276).

Plaintiff reported back to Bayfront in August 2009 following two reported seizures with apparent tongue trauma (Tr. 286-95). Dr. Passaro provided a neurological consultation and noted that he first evaluated Plaintiff in 2006, but Plaintiff had not followed up with him since March 2008 (Tr. 288). According to Dr. Passaro, a prior brain MRI with epilepsy protocol revealed unremarkable findings and an EEG demonstrated a right anterior to mid temporal sharp and slow wave discharge with the broad fields of the right hemisphere (*id.*). Upon examination, Dr. Passaro found Plaintiff's cranial nerves and visual fields intact, normal motor examination and bulk in all extremities, full power throughout the extremities, and symmetric fine motor, finger-nose-finger, rapid alternating movements, and heel-knee-shin coordination (Tr. 289). During the evaluation, Plaintiff reported that she was compliant with her medications, so Dr. Passaro increased her dosage of Lamictal and Topomax and reminded Plaintiff to take seizure precautions (Tr. 288-89). While admitted at Bayfront, Plaintiff did not experience any seizure activities (Tr. 291) and demonstrated normal findings upon examination by Dr. Kristen Marsonek (Tr. 293-95).[2]

[2] Prior to discharge, a chest X-ray was performed and indicated that Plaintiff had no acute cardiopulmonary process (Tr. 286).

At the time of discharge, Plaintiff was in stable condition (Tr. 291).

Plaintiff followed up with Dr. Passaro in September 2009 (Tr. 309-11). During the appointment, Plaintiff complained of seizures, obstructive sleep apnea, and headaches (Tr. 309). According to Plaintiff, her last seizure was in early August with two prior seizures in July 2009 and one in March 2009 (*id.*). Prior to her March 2009 seizure, she had not experienced a seizure for approximately a year (*id.*). During the September 2009 examination, Dr. Passaro noted that Plaintiff was awake, alert, and oriented to person, place, time and situation (Tr. 310). Dr. Passaro further observed that Plaintiff's language was fluent and spontaneous; she could follow complex three-step commands with intact naming and repetition; her visual fields were full to confrontation; her extraocular movements were full; her pupils were round, regular, and reacted to light; her facial sensation was normal; she had no facial asymmetry at rest or with activation; her hearing and speech articulation were normal; tongue was midline and strong; she had normal bulk and tone in all four extremities; her power was normal; her fine motor skills, finger-nose-finger, and heel-knee-shin were normal; her tandem gait was normal; her normal fine touch and temperature were without extinction to double simultaneous stimulation; and her narrow based gait was steady with normal heel lift and arm swing (*id.*). Given his examination findings, Dr. Passaro diagnosed Plaintiff with localization-related (focal) (partial) epilepsy and epileptic syndromes with complex partial seizures, with intractable epilepsy and complex partial seizures of right temporal lobe origin in a woman with a history of generalized tonic-clonic seizures in the past (*id.*). As a result, Dr. Passaro increased Plaintiff's Lamictal prescription and reviewed seizure precautions with Plaintiff, including no driving of a motor vehicle unless seizure-free for

six consecutive months, climbing heights, swimming alone, taking baths alone (although she could shower alone), or operating heavy machinery (*id.*).

Plaintiff returned to Bayfront in October 2009 following another reported seizure (Tr. 347-50). Upon examination, Plaintiff demonstrated no abnormal findings and was alert, oriented in all spheres, and in no acute distress (Tr. 349). Months later, in April 2010, Plaintiff returned to Dr. Passaro regarding her seizures and headaches (Tr. 391-94). Plaintiff reported tolerating her medications without adverse effects but stated that she experienced seven seizures since September 2009, with three occurring in April 2010 (Tr. 391). Additionally, Plaintiff reported that she could not describe her seizures but that she often gets headaches following a seizure and that the headache typically lasts two months (*id.*). Regarding her headaches, however, Plaintiff reported that her medication made her headaches much better and she no longer required daily Alleve for her headaches (*id.*). Dr. Passaro made the same normal findings upon examination of Plaintiff as in September 2009 (Tr. 392). After examining Plaintiff, Dr. Passaro diagnosed Plaintiff with localization-related (focal) (partial) epilepsy and epileptic syndromes with complex partial seizures, with intractable epilepsy and complex partial seizures of right temporal lobe, obstructive sleep apnea, chronic tension headaches, obesity, and vitamin D deficiency (Tr. 392-93). Dr. Passaro then continued Plaintiff on a medication regimen to treat her seizures, but did not prescribe any medication for Plaintiff's headaches, and ordered labs and diagnostic imaging and directed that a follow-up appointment be scheduled in three months (Tr. 393).

Prior to the follow-up appointment, in May 2010, a twenty-four-hour EEG yielded normal results during both the awake and normal stages (Tr. 395). After that, as directed, Plaintiff

followed up with Dr. Passaro a few months later in July 2010 (Tr. 395-98). During the July 2010 appointment, Plaintiff stated that she tolerated her seizure medications without adverse effects, such as cognitive slowing, sedation, diplopia, or gait instability, and estimated that she typically missed a morning dose of her medications twice per month (*id.*). According to Plaintiff, she experienced one seizure in June 2010 and none in July 2010 and felt that her memory was fine (*id.*). Upon examination, Plaintiff demonstrated normal findings (Tr. 396). As a result, Dr. Passaro ordered some labs and a follow-up appointment for three months later (Tr. 397).

In December 2010, Plaintiff reported to Bayfront following another reported seizure (Tr. 399-411). Plaintiff presented no abnormal findings upon examination, expressed improvement in her headaches, and did not experience a seizure while admitted to Bayfront (Tr. 402, 407). Following that, in February 2011, Plaintiff returned twice to Bayfront following reported seizure activity (Tr. 427-41). During the initial visit, Plaintiff again presented no abnormal findings upon examination (Tr. 429). Indeed, a CT of the head without contrast revealed that Plaintiff had no acute intracranial abnormality (Tr. 433). About a week later, Plaintiff returned to Bayfront following another reported seizure and, with the exception of a tongue laceration, presented no abnormal findings upon examination (Tr. 437).[3]

Later, in March 2011, Plaintiff went back to Bayfront following another reported seizure (Tr. 454-56). While admitted at Bayfront, Plaintiff coughed up blood and a chest X-ray showed diffuse bilateral alveolar infiltrates with severe hypoxemia, so Plaintiff received a high-flow

---

[3] A chest X-ray revealed low lung volumes with secondary crowding of the central pulmonary vessels but showed no evidence of any focal consolidation, pleural effusions, pneumothorax, or acute osseous abnormalities (Tr. 441)

oxygen regimen (Tr. 454). Plaintiff reported compliance with her medications (*id.*). Plaintiff was placed on antibiotics and an oxygen supplement and labs and chest X-rays were recommended (Tr. 455).

As the foregoing indicates, despite Plaintiff's repeated reports of seizures, Plaintiff demonstrated normal findings upon examination, with a couple minor exceptions, by both Dr. Passaro and while at Bayfront. Repeatedly upon discharge from Bayfront, Plaintiff was listed as stable and told to simply follow up with Dr. Passaro. After examining Plaintiff and repeatedly observing no abnormalities, Dr. Passaro kept Plaintiff on her medication regimen and advised her to implement standard seizure precautions, such as avoiding driving a motor vehicle unless she was seizure-free for a period of six consecutive months and avoiding swimming or taking a bath alone, although he noted that Plaintiff could shower alone.

In arguing that the ALJ erred, Plaintiff contends that the ALJ failed to properly consider the records from Bayfront, to articulate the weight the ALJ assigned to Dr. Passaro's opinion, and to include all of the "restrictions" identified by Dr. Passaro. As the decision indicates, however, the ALJ thoroughly considered the treatment notes from Bayfront as well as the findings of Dr. Passaro, including the restrictions Dr. Passaro placed upon Plaintiff as a result of her reported seizures (Tr. 29-33). Namely, Plaintiff contends that Plaintiff's inability to drive a motor vehicle or bathe or swim alone somehow precludes her from performing the requirements of her past relevant work. As the Commissioner notes, however, Plaintiff fails to demonstrate any sort of link between a restriction to not driving or bathing or swimming alone that would translate into total preclusion of Plaintiff's ability to work or to perform the requirements of her past relevant

work. The ALJ limited Plaintiff to performance of medium work with avoidance of even moderate exposure to moving machinery, which would include a motor vehicle (Tr. 30). Furthermore, Plaintiff's past relevant work as a transcriptionist, customer service representative, and cashier did not require Plaintiff to operate a motor vehicle or bathe or swim alone and, therefore, the ALJ did not need to address those restrictions in his decision or in determining Plaintiff's RFC and ability to perform her past relevant work. Accordingly, the ALJ properly considered the findings of Dr. Passaro, including the restrictions he placed on Plaintiff, and the treatment notes from Bayfront in rendering his decision.

Although, as Plaintiff notes, the ALJ did not explicitly state the weight he afforded to Dr. Passaro's opinion, such error is harmless. *See Caldwell v. Barnhart*, 261 Fed. App'x 188, 191 (11th Cir. 2008) (finding that the ALJ's failure to discuss weight given to physicians constituted harmless error when the opinion did not contradict the ALJ's finding). The decision indicates that the ALJ thoroughly reviewed and considered Dr. Passaro's findings at each stage of the sequential analysis. Dr. Passaro's repeated normal findings do not contradict the ALJ's finding but rather form the basis for the ALJ's conclusion that Plaintiff maintained the ability to perform her past relevant work and was thus not disabled. In this instance, therefore, the ALJ's failure to explicitly articulate the weight afforded to Dr. Passaro's opinion does not warrant remand since it is clear that the ALJ properly considered such opinion, did not discount the opinion or findings in any way, and the opinion and findings comport with the ALJ's findings. *See id*; *see, generally, Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987) (stating that an ALJ is not necessarily required to use particular phrases or formulations but must make clear what statutory and

regulatory requirements the ALJ applies).

**B. Subjective Complaints**

Plaintiff next contends that the ALJ failed to properly consider Plaintiff's subjective complaints of headaches, both alone and in combination with her seizure disorder, and by failing to give Plaintiff's subjective complaints full credit. In addition to the objective evidence of record, the Commissioner must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence. *See* 20 C.F.R. §§ 404.1529, 416.929. In social security disability cases, credibility determinations fall within the province of the ALJ. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). Typically, the ALJ makes credibility determinations regarding a claimant's subjective complaints and must provide specific reasons for the credibility finding. *Holt v. Sullivan*, 921 F.2d 1221,1223 (11th Cir. 1991) (*per curiam*); Social Security Ruling 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996). To establish a disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or (2) that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms. *Wilson*, 284 F.3d at 1225; *see* 20 C.F.R. §§ 404.1529, 416.929. When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225; *Foote v. Chater,* 67 F.3d 1553, 1561-62 (11th Cir. 1995). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote,* 67 F.3d at 1562.

In considering Plaintiff's subjective complaints regarding her headaches and in determining Plaintiff's credibility, the ALJ offered several bases for finding Plaintiff's purported limitations not entirely credible, each of which provide substantial support for the ALJ's decision (Tr. 31-33). Most notably, the ALJ pointed to the lack of medical evidence that justified the extreme limitations that Plaintiff alleged. As detailed more fully above, the medical evidence of record does not support Plaintiff's complaints of disabling pain, concentration issues, and the need to lie down as a result of her headaches. As the ALJ noted, Plaintiff stated that she suffered from about two to three seizures per month with headaches occurring after each, yet Plaintiff failed to provide medical records to corroborate such statements (Tr. 32). Instead, the record indicated that, when Plaintiff reported to the hospital with purported seizure activity, she consistently demonstrated no abnormal results. Although Plaintiff complained of headaches, the treatment notes from both Bayfront and Dr. Passaro indicated that Plaintiff's headaches improved and never reached a level where they were disabling or required her to lie down for any period of time. Furthermore, to the extent that Plaintiff's complaints regarding her headaches were considered credible, the ALJ correctly noted that the evidence showed that Plaintiff's headaches were better when she took her medication (Tr. 205, 391). In fact, during the administrative hearing, Plaintiff stated that her medication relieved her headaches completely (Tr. 59-62).

As further support for his credibility finding, the ALJ also noted that, during a portion of the period that Plaintiff sought disability benefits because of her claim that she was unable to work, Plaintiff also sought and received unemployment benefits based on her statement that she maintained the ability to work. Numerous courts have determined that an ALJ may consider a

claimant's application for and receipt of unemployment compensation in making a credibility determination. *See Witherspoon v. Colvin*, No. CA 12-0220-C, 2013 WL 1154319, at *18 n.13 (S.D. Ala. Mar. 19, 2013); *George v. Astrue*, CV-11-S-3518-M, 2012 WL 3030157, at *1-*5 (N.D. Ala. July 20, 2012); *Boyd v. Astrue*, No. 3:10-cv-105-J-JRK, 2011 WL 1259795, at *6-*7 (M.D. Fla. Mar. 31, 2011). Though Plaintiff takes issue with the ALJ's reference to Plaintiff's receipt of unemployment benefits, the ALJ did not rely solely upon Plaintiff's application for or receipt of unemployment benefits in evaluating Plaintiff's credibility. Instead, the ALJ considered the issue, albeit very briefly, as the application and receipt of unemployment benefits demonstrated inconsistencies in Plaintiff's representations to various agencies and further demonstrated Plaintiff's willingness and ability to work. *See George*, 2012 WL 3030157, at *5 ("This court understands that claimant may have had valid, even compelling, personal reasons for applying for unemployment compensation and Social Security disability benefits at the same time. But the ALJ nonetheless was entitled to consider the inconsistencies in claimant's representations to various agencies in evaluating claimant's credibility."); *Boyd*, 2011 WL 1259795, at *7 ("[W]hen viewed in context, it is apparent the ALJ was supporting his credibility determination by referencing the inconsistent positions of Plaintiff applying for unemployment compensation and Plaintiff's claim for disability insurance benefits" (citation omitted)); *Willimon v. Astrue*, No. 3:08-cv-1235-J-JRK, 2010 WL 1252152, at *4 (M.D. Fla. Mar. 26, 2010) ("Rather, it appears the ALJ was only pointing out the inconsistency between collecting unemployment benefits while claiming to be as limited as Plaintiff alleges. When it was necessary to report that he was able to work for the purpose of obtaining unemployment benefits, Plaintiff so reported;

now that Plaintiff is seeking disability benefits, he is reporting that he is unable to work. These positions are inconsistent" (internal citation omitted)). As the ALJ noted, the inconsistent positions taken by Plaintiff further reduced Plaintiff's credibility (Tr. 31).

Finally, nothing in the record indicated that Plaintiff stopped working due to any disabling impairment. Instead, the record indicated that Plaintiff was laid off from her job (Tr. 31, 199, 217, 309). Indeed, during the administrative hearing, Plaintiff confirmed that she did not stop working due to a disabling impairment but rather because the company moved to Tennessee (Tr. 52). Such evidence provides additional support for the ALJ's finding that Plaintiff's impairments, including her headaches, and other subjective complaints did not preclude Plaintiff from working.

Given the foregoing, the ALJ appropriately considered Plaintiff's subjective complaints, including her alleged concentration issues and need to lie down as a result of her headaches, and properly rejected such complaints as not entirely credible. Substantial evidence supports the ALJ's findings in that regard. Accordingly, remand is not warranted.

**C. Hypothetical**

Finally, Plaintiff argues that the ALJ erred by failing to pose a complete hypothetical to the VE. If the ALJ utilizes the testimony of a VE, the ALJ must pose an accurate hypothetical to the VE that takes into account all of the claimant's impairments. *See Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (citation omitted). If the ALJ properly rejects purported impairments or limitations, the ALJ need not include those findings in the hypothetical posed to the VE. *Crawford*, 363 F.3d at 1161 ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported"). For a VE's testimony

to constitute substantial evidence, however, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Wilson*, 284 F.3d at 1227 (citation omitted).

Plaintiff argues that the ALJ failed to include in the hypothetical a limitation relating to an inability to concentrate and to the need to lie down from headaches. As the ALJ noted in his decision, Plaintiff claimed she experienced difficulty concentrating and she experienced headaches (Tr. 32-33). Notably, however, the record indicated that Plaintiff did not consistently experience or report concentration issues and instead repeatedly appeared alert and oriented to all spheres without any cognitive deficiencies. Regarding headaches, Plaintiff reported that her medication improved her headaches and she mainly experienced headaches following a reported seizure. Following visits to Bayfront for her reported seizure activity, Plaintiff was repeatedly discharged with improvement in her headaches and no major complaints. Furthermore, although Dr. Passaro diagnosed Plaintiff with tension headaches, he did not prescribe any treatment regimen for her headaches, which suggests that Plaintiff's limitations stemming from her headaches were minimal at best.

As discussed in greater detail above, in his decision, the ALJ addressed Plaintiff's complaints regarding an inability to concentrate and her headaches and properly determined that the medical evidence was inconsistent with her subjective complaints (Tr. 32-33). As a result, the ALJ did not find Plaintiff's complaints and purported limitations credible. Given the lack of support for Plaintiff's subjective complaints and her purported limitations, the ALJ properly excluded such limitations from the hypothetical posed to the VE. *Crawford*, 363 F.3d at 1161. Indeed, the ALJ posed a hypothetical to the VE that incorporated the limitations that the ALJ

found credible and that were supported by the evidence of record, and, in response, the VE opined that an individual with Plaintiff's background and RFC would maintain the ability to perform Plaintiff's past relevant work (Tr. 64-66). Since the hypothetical comprised all of the claimant's credible impairments and limitations, the VE's testimony provided substantial evidence supporting the ALJ's decision. *Wilson*, 284 F.3d at 1227. Accordingly, remand is not warranted.

**IV.**

Accordingly, for the foregoing reasons, it is

RECOMMENDED:

1. The decision of the Commissioner be AFFIRMED.

2. The Clerk be directed to enter final judgment in favor of the Commissioner and close the case.

IT IS SO REPORTED in Tampa, Florida, on this 7th day of July, 2014.

ANTHONY E. PORCELLI
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*


cc:   Hon. Elizabeth A. Kovachevich

   Counsel of Record