UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHARLENE GRADY,

Plaintiff,

v.

CASE NO. 8:13-CV-1395-T-17AEP

CAROLYN W. COLVIN,
Commissioner of Social
Security,

Defendant.

_____/


ORDER

This cause is before the Court on:

Dkt. 18   Report and Recommendation
Dkt. 19   Objection

In her Complaint, Plaintiff Sharlene Grady seeks review of the denial of Plaintiff's
claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental
Security Income ("SSI").   The assigned Magistrate Judge has entered a Report and
Recommendation finding that the decision of the Administrative Law Judge ("ALJ") was
based on substantial evidence and employed proper legal standards, and
recommending that the decision of the Commissioner be affirmed.

The alleged onset date of Plaintiff's disability is October 1, 2008, and the date of
last insurability is December 31, 2013.

The Court has independently reviewed the pleadings and the record.   Plaintiff
Grady has filed Objections to the Report and Recommendation.

Case No. 8:13-CV-1395-T-17AEP

I.  Standard of Review


A.  Report and Recommendation


The District Court reviews de novo the portions of the Report and Recommendation or specified proposed findings to which an objection is made.  The District Court may accept, reject, or modify in whole or in part the report and recommendation of a magistrate judge, or may receive further evidence, or may recommit the matter to the Magistrate Judge with instructions.


B.  Social Security Claim


This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining: (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  Richardson v. Perales, 402 U.S. 389, 390, 401 91 S.Ct. 1420, 28 L. Ed. 2d 842 (1971); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).  The Court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner.  See Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  However, this limited scope does not render affirmance automatic, for "despite [this] deferential standard for review of claims . . . [the] Court must scrutinize [the] record in its entirety to determine reasonableness of the decision reached."  Bridges v. Bowen, 815 F.2d 622 (11th Cir. 1987); Lamb, 847 F.2d at 701.  Moreover, failure to apply the correct legal standards is grounds for reversal.  Bowen v. Heckler, 748 F.2d 629, 634 (11th Cir. 1984).


With respect to the sequential analysis, the burden rests with the claimant through the first four steps of the analysis, and shifts to the Commissioner at step five. See Audler v. Astrue, 501 F.3d 446, 448 (5th Cir. 2007).

2

Case No. 8:13-CV-1395-T-17AEP

II. Discussion

A. Plaintiff's Objections

Plaintiff Grady objects to the Report and Recommendation as follows:

1.  The ALJ did not apply correct legal standards to the opinions of treating physicians Dr. Passaro and Bayfront Medical Center;

2.  The ALJ did not properly evaluate Plaintiff's subjective complaints under the "pain standard";

3.  The ALJ did not account for Plaintiff's functional limitations resulting from the headaches and difficulty concentrating in determining Plaintiff's RFC and in the hypothetical posed to the VE;

Plaintiff complains that the assigned Magistrate Judge did not follow controlling Eleventh Circuit precedents, and the Court should reject the Report and Recommendation, and immediately award benefits to Plaintiff.    Plaintiff argues that the Court should overrule the Magistrate Judge, based on <u>Sharfarz v. Bowen</u>, 825 F.2d 278, 279 (11th Cir. 1987); <u>Hickel v. Commissioner of Social Security</u>, 539 Fed. Appx. 980 (11th Cir. 2013)(unpublished).

Plaintiff argues that the most important restriction that is not mentioned in the decision of the ALJ is that Plaintiff is not able to drive a motor vehicle unless Plaintiff is seizure free for six months, and that Plaintiff could not bathe or swim alone.  Plaintiff complains that "the Magistrate Judge states that this is "standard seizure precautions" without any citation as to where this comes from."  Plaintiff argues that the above restrictions are significant because what is at issue in a Social Security case are the functional effects that an impairment would have upon an individual's ability to perform work on a sustained basis.    Plaintiff further complains that the ALJ addressed the effects of the seizures by utilizing the opinion of a non-examining physician, Dr. Renny,

3

Case No. 8:13-CV-1395-T-17AEP

in lieu of the opinions of Dr. Passaro, the treating physician, and the assigned Magistrate Judge did not address this issue.   Plaintiff argues that the functional effects of seizures and headaches, according to Dr. Passaro, include "not being left alone and not being placed in an area where the person could not operate machinery or drive a car."  As to additional functional effects,  Plaintiff argues that Plaintiff's testimony as to the limiting effects of seizures and headaches should be credited, including difficulty with concentration, and being absent from work two to three times a month.  Plaintiff argues that the tone of the Report and Recommendation indicates that the Magistrate Judge has forgotten that "seizures and headaches are non-exertional impairments and they do not require objective evidence of same per Elam v. Railroad Retirement Board, 921 F.2d 1210, 1215 (11th Cir. 1991)."  Plaintiff further argues that the hypothetical posed to the VE was incomplete in that it does not account for Plaintiff's problems with concentration, relying on Winschel v., Comm'r of Social Security, 631 F.3d1176, 1180-81 (11th Cir. 2011), and further "says nothing about an inability to drive or the fact that [Plaintiff] cannot even take a bath alone or swim alone, or that she needs to lie down on a consistent basis in the middle of the day due to headaches."  In other words, Plaintiff complains that substantial evidence does not support the ALJ's decision, since the hypothetical posed to the VE was incomplete, and benefits should immediately be awarded to Plaintiff.

Plaintiff complains that, at page 31, the ALJ states that the pain standard is met "to some extent", but the ALJ "does not exactly say what problems the impairments create and which impairments would cause the 11th Circuit Pain Standard to be met"; Plaintiff contends the vagueness and impropriety of saying the 11th Circuit Pain Standard is met "to some extent" requires remand.   Plaintiff further complains  that there is no statement of the weight to be given the opinions of Dr. Passaro, and all of the limitations that Dr. Passaro listed must be recognized:   "This would mean that [Plaintiff] cannot be left alone, she cannot drive a car, and she would, as a result of such problems, have headaches from the seizures and thereafter would have a

Case No. 8:13-CV-1395-T-17AEP

problem with concentration because of the chronic headaches and would also have to lie down as described." (Dkt. 19, p. 11).   Plaintiff further complains that there is no statement of the weight to be given reports from Bayfront Medical Center, and the report of 3/11/2011 substantiates the analysis of Dr. Passaro, and requires a finding of disability.

Plaintiff further argues that Plaintiff's receipt of unemployment benefits merely indicates "that someone who is willing to try to work.  It does not mean that [Plaintiff] could perform a specific job or that she was capable of performing any job, but that she would try to do such work if she could."  "It does not make [Plaintiff] any less disabled, or her medical conditions, as found by Dr. Passaro or Bayfront Medical Center,  would be any less true nor would [Plaintiff's] testimony with regard to the severe impairments of seizure and headaches...any less true."

As to Plaintiff's credibility, Plaintiff argues that the ALJ has substituted his opinion for that of Plaintiff's treating doctors.  Plaintiff argues that Plaintiff's testimony was not properly refuted and must be taken as true.  Plaintiff further argues that the opinions of Dr. Passaro and doctors at Bayfront Medical Center were not properly refuted, and should be taken as true.

B. Analysis

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.  20 CFR 404.1520(a) and 416.920(a).  The steps are followed in order.  If it is determined that a claimant is or is not disabled at a step in evaluation process, the evaluation will not go on to the next step.

At Step Two of the evaluation process, Plaintiff Grady had the mild burden of

Case No. 8:13-CV-1395-T-17AEP

showing that Plaintiff has an impairment which has more than a minimal impact on Plaintiff's ability to perform basic work activities. See Flynn v. Heckler, 768 F.2d 1273 (11th Cir. 1985). In this case, at Step Two of the evaluation process, the ALJ determined that Plaintiff Grady has the following severe impairments: a seizure disorder, sleep apnea, chronic headaches, and obesity. The ALJ reviewed Plaintiff's complete medical file and the testimony of witnesses in making the Step Two determination, noting the numerous visits to Bayfront Medical Center and treatment by neurologist Dr. Erasmo Passaro (Dkt. 14-2, pp. 30-31).

At Step Three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Plaintiff Grady does not challenge this determination.

After considering the entire record, the ALJ then determined that Plaintiff Grady has the residual functional capacity ("RFC") to perform medium work, as defined in 20 CFR 404.1567(c) and 416.967(c), except that Plaintiff should never climb ladders, ropes or scaffolds, and must avoid even moderate exposure to industrial hazards, unprotected heights and moving machinery.

At Step Four of the evaluation process, the ALJ determined that Plaintiff Grady has the residual functional capacity to return to Plaintiff's past relevant work as a transcriptionist, customer service representative and cashier. The ALJ determined that Plaintiff is able to perform those jobs as actually and generally performed, and found that Plaintiff has not been under a disability from October 1, 2008 through the date of the decision, November 21, 2011.

Case No. 8:13-CV-1395-T-17AEP

1. ALJ did not properly evaluate Plaintiff's subjective complaints under the "pain standard"

a. RFC

Residual functional capacity is an issue that is reserved to the Commissioner. It is a determination of the most a claimant can do, despite a claimant's limitations, and is assessed based on all relevant evidence in the record. 20 CFR 404.1545(a). 20 CFR Sec. 404.1545 explains in detail the evidence that the ALJ may consider and how RFC is determined.

In determining Plaintiff's RFC, the ALJ considered all of Plaintiff's symptoms, and the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence, opinion evidence, and other evidence.

b. Pain Standard

When a claimant attempts to establish disability through her own testimony of subjective pain, the "pain standard" applies. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). The pain standard requires: 1) evidence of an underlying medical condition and 2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or 3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. The "pain standard" applies to complaints of subjective conditions other than pain. Holt v. Sullivan, 921 F.2d 1221 (11th Cir. 1991). When coupled with medical evidence which satisfies the pain standard, a claimant's testimony of subjective pain is, in and of itself, sufficient to sustain a disability determination. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Case No. 8:13-CV-1395-T-17AEP

In this case, in determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain or other symptoms, the ALJ applied the "pain standard."   Allegations of pain and other subjective symptoms must be supported by objective medical evidence of a condition that could reasonably be expected to cause the pain or other symptoms alleged. See 20 CFR Sec. 404.1529.  Whenever statements about the intensity, persistence or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on consideration of the entire case record.  20 CFR Sec. 404.1529(c).

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent that they are inconsistent with the ALJ's RFC assessment.  The ALJ identified specific reasons for the ALJ's credibility determination:

1.   Plaintiff provided little medical evidence for the period at issue;

2.   Plaintiff drew unemployment benefits in 2009 and 2010, holding herself out as able and willing to work, and at the same time filed for a period of disability and DIB benefits and SSI;

3.   Plaintiff lost her job when her whole unit was moved to Tennessee, rather than because of Plaintiff's allegedly disabling impairments; Plaintiff's allegedly disabling impairments were present at approximately the same level of severity prior to the amended onset date, but did not prevent her from working;

4.  The medical record includes some inconsistent statements.  Plaintiff testified that she has two to three seizures per month and that she goes to the hospital after every seizure; the objective medical record does not support this level of seizure activity;

5.  The medical record does not support the frequency of Plaintiff's seizure activity to the level alleged; additionally, the medical record

8

Case No. 8:13-CV-1395-T-17AEP

contains very few anticonvulsant blood levels during the period in
question; Plaintiff's neurologist, Dr. Passaro, primarily only adjusts
Plaintiff's medications; a  one-hour EEG showed frequent right anterior to
mid-temporal sharp and slow wave discharges with a broad field over the
right hemisphere; a 24-hour EEG on 5/12/2010 was a normal awake
stage 1 and 2 Sleep EEG; Dr. Passaro's records of 7/27/2010 indicate
that Plaintiff reported no adverse side effects; Plaintiff admitted that she
sometimes misses a dose of medication and her memory is fine; the
medical record indicates that Plaintiff has had good compliance with her
medications; Plaintiff admits missing some medications throughout a
month; a CT scan of 2/1/2011 showed no acute intracranial abnormality;
the medical record shows that Plaintiff was able to work shortly after
experiencing a seizure; the medical record indicates that Plaintiff went to
the hospital numerous times following a seizure, and Plaintiff was
routinely found to be mostly normal on examination; overall, the medical
evidence is inconsistent with Plaintiff's allegations regarding the intensity
and limiting effects of her seizures, and this inconsistency undermines the
credibility of Plaintiff's allegations.

6.   The medical evidence indicates that Plaintiff suffers from headaches
and sleep apnea; Plaintiff claims she has difficulty concentrating and that
following a seizure she slurs her words; she has lost bowel function, and
she is puzzled, confused and nauseous; the medical record reflects that
Plaintiff did not mention many of these symptoms on numerous
occasions; Plaintiff testified she always goes to the hospital following a
seizure; hospital records show that Plaintiff was mostly normal on
examination, and was oriented to person, place, time and situation; the
medical records indicate that a CPAP was prescribed for Plaintiff's sleep
apnea, but that Plaintiff has not used the CPAP since Plaintiff took the
machine apart [one year, according to Dr. Passaro's records]; Plaintiff
testified that Plaintiff has severe headaches that last about 1 hour each
about twice per month; Plaintiff also reported to Dr. Passaro that her
headaches were better on her medication (Pamelor).  Overall, the medical
evidence is inconsistent with Plaintiff's allegations regarding her
headaches, sleep apnea, and symptoms, and this inconsistency
undermines the credibility of Plaintiff's allegations.

The ALJ determined that Plaintiff has impairments that are capable of creating

limitations on Plaintiff's ability to function, but that the evidence does not support as

severe functional limitations as Plaintiff alleges.  The ALJ found that Plaintiff is not fully

credible and is capable of doing more than Plaintiff alleges, and that Plaintiff's

Case No. 8:13-CV-1395-T-17AEP

symptoms and restrictions were not supported by the relevant medical signs, laboratory findings, or nonmedical evidence to the level of disability alleged. The ALJ determined that the evidence shows Plaintiff's impairments preclude Plaintiff from performing very heavy and heavy exertion activity, but the evidence of record as a whole supports a finding that Plaintiff is able to perform medium work activity as described in the RFC determination.

It is the role of the ALJ, not the Court, to resolve conflicts in the evidence. The Court finds the reasons provided by the ALJ are supported by the record and constitute substantial evidence to support the ALJ's credibility determination. After consideration, the Court **overrules** Plaintiff's objection as to the ALJ's application of the "pain standard."

B. ALJ did not apply correct legal standards to the opinions of treating physicians Dr. Passaro and Bayfront Medical Center

Medical opinions are statements from physicians...or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including...symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions. See 20 CFR Sec. 404.1527(a)(2)

In this case, Dr. Erasmo Passaro was Plaintiff's treating physician for Plaintiff's seizures, headaches and sleep apnea.

Plaintiff Grady argues that Bayfront Medical Center is also Plaintiff's treating physician, based on Plaintiff's repeated visits to the emergency room at Bayfront Medical Center.

Case No. 8:13-CV-1395-T-17AEP

At Step Two, the ALJ noted Plaintiff's visits to the emergency room of Bayfront Medical Center, in which Plaintiff complained of seizures: 2/26/2008, 3/3/2008, 7/24/2009, 8/27/2009, 10/26/2009, 2/1/2011, 2/7/2011, 3/4/2011.  In determining Plaintiff's RFC, the ALJ noted that Plaintiff went to the hospital numerous times following a seizure, but Plaintiff was routinely found to be mostly normal on examination.  The ALJ considered the medical evidence of Plaintiff's visits to Bayfront Medical Center, but did not make any explicit determination as to the hospital's status as a treating physician.

The Court notes that the applicable regulations require an ongoing treatment relationship:

> Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.  Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)....

See 20 CFR Sec. 404.1502, 416.902.  A physician who examines Plaintiff on a single occasion is not considered a treating source, and the physician's opinion is not entitled to deference.  See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987).

While Plaintiff has repeatedly visited the emergency room at Bayfront Medical Center, there is no ongoing treatment relationship.  The Court finds that Bayfront Medical Center is not a "treating physician" in this context.

Case No. 8:13-CV-1395-T-17AEP

1. Weight Accorded to Opinion of Treating Physician

A treating physician's opinion will be granted controlling weight if it is consistent with other medical evidence and is well-supported by acceptable clinical and diagnostic techniques.   20 C.F.R. § 404.1527(d)(2).   Where some medical evidence is found to be inconsistent with the treating physician's opinion, the ALJ should give that opinion "substantial or considerable" weight unless "good cause" is shown to the contrary. Lewis v. Callahan, 125 F.3d 1436, 1140 (11th Cir. 1997).   The Eleventh Circuit has found "good cause" to exist where: (1) the opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the opinion was conclusory or inconsistent with the doctor's own medical records.   Wright v. Barnhart, 153 Fed. Appx. 678, 684 (11th Cir. 2005).   If the ALJ grants less than substantial or considerable weight to a treating physician, the ALJ  must clearly articulate the reasons for doing so. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

"When an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand."   Caldwell v. Barnhart, 261 Fed. Appx. 188, 190 (11th Cir. 2008)(citations omitted).

In evaluating the necessity of a remand, the Court considers whether the record reveals evidentiary gaps which result in unfairness or clear prejudice.   Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995).   The likelihood of unfair prejudice may arise if there is an evidentiary gap that the claimant contends supports her allegations of disability. Id. at 936.

Plaintiff Grady's only treating physician is Dr. Passaro.   The ALJ does not discount the opinion of Plaintiff's treating physician.   At Step Two of the evaluation process, the ALJ reviewed the complete medical file and the testimony of the

Case No. 8:13-CV-1395-T-17AEP

witnesses.  The ALJ noted that the medical records indicate that the claimant experienced seizures in 2006, 2007 and 2008, but was able to work at substantial gainful activity levels during that time.  The ALJ further addressed the record of Plaintiff's visits to Bayfront Medical Center, and Dr. Passaro's records from 3/4/2008 to 7/27/2010.  The ALJ relied on Dr. Passaro's records in making the determination of Plaintiff's severe impairments at Step Two.  In determining Plaintiff's RFC, the ALJ relied on Dr. Passaro's records in his assessment of Plaintiff's credibility, noting inconsistencies between the medical evidence and Plaintiff's allegations regarding the intensity and limiting effects of her seizures, and inconsistencies between the medical evidence and Plaintiff's allegations regarding her headaches, sleep apnea and symptoms.

The Court notes that Dr. Passaro's records reflect that Dr. Passaro took a history, examined Plaintiff, scheduled various tests and prescribed medication.  Each record indicates a review of "seizure precautions."  The medical record dated 9/24/2009 states:

**Assessment:**

> 1.  Localization-related (focal)(partial) epilepsy and epileptic syndromes with complex partial seizures, with intractable epilepsy - 345.41 (Primary), Complex partial seizures of right temporal lobe origin in a woman with a history of generalized tonic-clonic seizures in the past.  We will increase her Lamictal to 200 mg bid.  Seizure precautions were reviewed including no driving of a motor vehicle unless seizure free for six months, no climbing heights, swimming alone, taking baths alone (showers are okay), no operating heavy machinery.  A seizure precautions handout and an epilepsy education website (epicareflorida.com) were provided...

(Dkt. 14-8, p. 10).

After testing and evaluation, Dr. Passaro treated Plaintiff for her seizures and headaches by prescribing medication, and making adjustments to Plaintiff's medication.

13

Case No. 8:13-CV-1395-T-17AEP

Dr. Passaro diagnosed sleep apnea, and prescribed CPAP therapy. The Court notes that Dr. Passaro does not express any opinion directly on what Plaintiff can do at work despite Plaintiff's impairments, and does not specify Plaintiff's physical or mental restrictions, aside from "seizure precautions."

The ALJ never says the magic words "I accord great weight to the opinion of Plaintiff's treating physician, Dr. Passaro." However, given that Dr. Passaro is Plaintiff's only treating physician, and the ALJ relied on Dr. Passaro's diagnosis and treatment in the sequential evaluation process, it is clear that the ALJ did so. The problem is that, aside from a general requirement of seizure precautions, there is no express statement of Dr. Passaro's opinion as to Plaintiff's functional limitations at work. At Steps One through Four, the burden is on the claimant; at Step Five the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The burden was on Plaintiff to provide evidence that supports Plaintiff's allegations of functional limitations caused by Plaintiff's medically determinable impairments.

The ALJ accorded significant weight to the opinion of Thomas Renny, D.O., who opined that Plaintiff could perform the full range of medium work but should never climb ladders, ropes or scaffolds; that Plaintiff could frequently balance, stoop, kneel crouch, crawl, and climb ramps or stairs, and must avoid even moderate exposure to hazards such as heights and machinery. Thomas Renny, D.O., submitted a Physical Residual Functional Capacity Assessment dated 11/14/2009, in which postural limitations (never climb ladder/ropes/scaffolds) and environmental limitations (avoid even moderate exposure to the hazards of machinery, heights) were found. Dr. Renny concluded that Plaintiff has some limitations due to seizures, sleep apnea, hypertension and migraines; the frequency of seizures suggests Plaintiff is partially credible, but the medical evidence the limitations does not suggest Listing level criteria. (Dkt. 14-7, pp. 370-380).

Dr. Renny is a non-examining Medical Consultant; his opinion is opinion

14

Case No. 8:13-CV-1395-T-17AEP

evidence to be considered by the ALJ pursuant to 20 CFR Sec. 404.1527(e)(2).  The ALJ explains the weight accorded to Dr. Renny's opinion: Dr. Renny gave detailed explanations of the evidence he used to base his opinion; the medical evidence substantiates his findings, and as a medical consultant with the Social Security Administration, Dr. Renny is well-versed in the assessment of functionality as it pertains to the disability provisions of the Social Security Act, as amended.

Exertional limitations affect an individual's ability to meet the seven strength demands of the job: sitting, standing, walking, lifting, carrying, pushing and pulling. Nonexertional limitations or restrictions affect an individual's ability to meet the other demands of jobs, and include mental limitations, pain limitations, and all physical limitations that are not included in the seven strength demands.  See SSR 96-4p. 1996 WL 362210 (7/2/1996).

As to exertional limitations, Dr. Renny's opinion specifies occasional lifting/carrying of 50 pounds, frequent lifting and carrying of 25 pounds, able to stand/walk 6 hours out of an 8-hour work day; able to sit for 6 hours out of an 8-hour work day; an unlimited ability to push/pull.  Dr. Passaro's records do not establish any exertional limitations; therefore the ALJ properly accorded significant weight to the opinion of Dr. Renny.

Dr. Renny's opinion further designates Plaintiff's nonexertional limitations at work due to Plaintiff's seizure disorder: able to frequently climb stairs, balance, kneel, crouch, crawl but never climb ladder/ropes/scaffolds; no manipulative limitations; no visual limitations; no communicative limitations; as to environmental limitations, avoid even moderate exposure to hazards (machinery, heights, etc.), but unlimited exposure to extreme heat, extreme cold, wetness, humidity, noise, vibration, fumes, odors, gases, poor ventilation, etc.   Dr. Renny's opinion is consistent with Dr. Passaro's "seizure precautions" of "no climbing heights," and "no operating heavy machinery."  The

Case No. 8:13-CV-1395-T-17AEP

remaining seizure precautions of Dr. Passaro are: "no driving a car unless seizure free
for six months, no swimming alone, no taking baths alone (showers are okay)." As to
driving, Plaintiff testified that Plaintiff does not drive; Plaintiff's driver's license was
revoked. These safety precautions involve personal activities outside the workplace;
there is no evidence that Plaintiff's past relevant work included any of these actions.
The administrative record shows that Plaintiff reported her past work to include work as
a transcriptionist, a customer service representative, and a cashier.

      The ALJ does not expressly designate the weight accorded to the opinion of Dr.
Passaro, Plaintiff's treating physician. The Court concludes that, in this context, this is
a harmless error. Dr. Passaro did not express an opinion as to Plaintiff's functional
limitations, aside from "seizure precautions" and Dr. Renny's opinion is consistent with
the seizure precautions designated by Dr. Passaro that are relevant to the workplace.
Therefore, a remand is not necessary to fill an evidentiary gap which results in
unfairness or clear prejudice to Plaintiff.

      After consideration, the Court **overrules** Plaintiff's Objection as to this issue.

C. ALJ did not account for Plaintiff's functional limitations resulting from the headaches
   and difficulty concentrating in determining Plaintiff's RFC and in the hypothetical
   posed to the VE

1. Plaintiff's RFC

      In assessing Plaintiff's credibility, the ALJ noted that Plaintiff reported to Dr.
Passaro that her headaches are better on Pamelor (4/29/2010). The ALJ also noted
that Plaintiff was examined at the hospital after a seizure, and Plaintiff was mostly
normal to completely normal on examination. The ALJ noted that Plaintiff claims she
has difficulty concentrating, following a seizure Plaintiff slurs words, Plaintiff has lost
bowel function, and Plaintiff is puzzled, confused and nauseous; the medical record

Case No. 8:13-CV-1395-T-17AEP

reflects that Plaintiff did not mention many of these symptoms on numerous occasions. The ALJ found that, overall, the medical evidence is inconsistent with Plaintiff's allegations regarding her headaches, sleep apnea and symptoms, and this inconsistency undermines the credibility of Plaintiff's allegations.   The ALJ determined that Plaintiff was only partially credible as to the severity of the functional limitations arising from Plaintiff's seizures, headaches and sleep apnea, and Plaintiff's symptoms and restrictions are not supported by the relevant medical signs, laboratory findings or nonmedical evidence to the level of disability alleged.

The Court has overruled Plaintiff's objection as to the pain standard, finding that substantial evidence supports the ALJ's determination as to Plaintiff's credibility.  The limitations in Plaintiff's RFC include the ALJ's consideration of Plaintiff's seizures, headaches, sleep apnea, and symptoms, to the extent that the ALJ determined that Plaintiff's allegations concerning the intensity, persistence and limiting effects of Plaintiff's symptoms were credible.

There is a conflict in the evidence between Plaintiff's testimony as to the limiting effects of Plaintiff's headaches and alleged lack of concentration, and the medical evidence; the ALJ resolved that conflict in finding Plaintiff's allegations concerning the intensity, persistence and limiting effects of Plaintiff's symptoms only partially credible. The Court finds that the determination of the ALJ is supported by substantial evidence, and **overrules** Plaintiff's Objection as to this issue.

2. Hypothetical posed to VE

In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of a claimant's impairments. Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002).   However an ALJ is "not

17

Case No. 8:13-CV-1395-T-17AEP

required to include findings in the hypothetical that the ALJ has properly rejected as unsupported." <u>Crawford v. Commissioner of Social Security</u>, 363 F.3d 1155, 1161 (11th Cir. 2004). The ALJ is not required to include in his hypothetical any medical conditions which are controlled by medication. <u>McSwain v. Bowen</u>, 814 F.2d 617, 619-20 (11th Cir. 1987).

In the hypothetical posed to the VE, the ALJ refers to an individual of the claimant's age, education and work experience, who would not have any exertional limitations, but who would never be allowed to perform activities of climbing ropes, or ladders or scaffolds, and that would have to avoid even moderate exposure to industrial hazards and unprotected heights, moving machinery. The VE testified that such an individual would be able to perform jobs identified by DOT number, transcriptionist, customer service representative and cashier II.

At the hearing before the ALJ, Plaintiff testified that her headaches occur twice a month, they last an hour, her medication completely resolves her headaches, and she experiences no side effects. (Dkt. 14-2, pp. 60, 62-63). As to lack of concentration, the ALJ noted that Plaintiff maintained substantial gainful employment after the seizures started, that this symptom was not reported on many occasions, and when Plaintiff went to the emergency room of Bayfront Medical Center after a seizure, the findings upon examination were mostly normal. Although Plaintiff disputes the credibility determination of the ALJ in which the ALJ found that Plaintiff was only partially credible as to the intensity, persistence and limiting effects of Plaintiff's symptoms, the Court has already determined that the ALJ's credibility determination is supported by substantial evidence.

After consideration, the Court **overrules** Plaintiff's Objection as to the determination of Plaintiff's RFC and the hypothetical posed to the VE. Accordingly, it is

Case No. 8:13-CV-1395-T-17AEP

**ORDERED** that Plaintiff's Objections are **overruled**; the decision of the ALJ is **affirmed**. The Clerk of Court **shall enter** a final judgment in favor of Defendant Carolyn W. Colvin, Commissioner of Social Security, and close this case.

**DONE and ORDERED** in Chambers, in Tampa, Florida on this 9th day of September, 2014.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:
All parties and counsel of record

19